UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

LEONARD MACK,

Plaintiff,

-against-

TOWN OF GREENBURGH, Lieutenant JOHN SCHACHINGER, in his individual capacity, LORI WILLARD and LYNNE LEMMO, as Co-Administrators of the Estate of Robert Willard, and PUBLIC ADMINISTRATOR OF WESTCHESTER COUNTY, as Administrator of the Estate of Gerrard Holley,

Defendants.

-----------------------------------------------------------x

**DECISION AND ORDER**

24 Civ. 8990 (KMK) (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Presently before the Court is a joint motion filed by Plaintiff Leonard Mack ("Plaintiff") and all remaining Defendants ("Defendants") to unseal the minutes from the 1975 grand jury proceedings in the New York State criminal prosecution captioned *The People of the State of New York v. Leonard Mack*, Indictment No. 70002-75. For the reasons that follow, the parties' motion to unseal is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND[1]

The underlying crime at the center of this action was committed on May 22, 1975. SAC ¶ 1. Two teenage girls—W.J. and S.F.[2]—were walking home from school and were attacked by a single assailant. *Id.* ¶ 32. Both victims were bound and blindfolded, and S.F. was raped twice. *Id.* ¶¶ 32-34. The victims described their attacker to police as a young Black man, wearing a large black hat (possibly with a white band), a tan jacket, dark pants, and a gold earring. *Id.* ¶ 47.

### A. Plaintiff's Arrest

At approximately 6:00 p.m. on May 22, 1975—roughly two hours after the attack—Plaintiff was driving on the Bronx River Parkway. *Id.* ¶ 50. According to the Second Amended Complaint, Patrolman James Fleming, who had heard the Greenburgh Police Department's dispatch alert, observed that Plaintiff was a Black male in his early 20s and pulled Plaintiff over, telling him that he fit the description of a rape suspect. *Id.* Plaintiff alleges that he told Fleming that he did not rape anyone and that he had spent the afternoon with his girlfriend. *Id.* ¶ 51. Fleming searched Plaintiff's vehicle, found a .22 caliber revolver in the trunk, and arrested Plaintiff for gun possession. *Id.* ¶ 53. Plaintiff alleges that Fleming kept him at the roadside on the Bronx River Parkway "to conduct an unjustified and suggestive roadside identification

[1] This concise recitation of facts and allegations is limited to information that bears on the legal questions currently before the Court, and is drawn from various filings. *See* ECF No. 94 ("Second Amended Complaint" or "SAC"); ECF No. 148 ("Defs.' Mem."); ECF No. 153 ("Opp'n Mem."); ECF No. 155 ("Defs.' Reply"); ECF No. 142 ("Pl.'s Letter Mot."); and ECF No. 142-3 ("Pl.'s Mem."). To be clear, even though a considerable amount of discovery has taken place already, there was no need for the parties to have presented the facts of the case in connection with this motion in the way that they would for summary judgment motions, and they have not done so. This summary does not constitute, and should not be construed as, any sort of factual findings by the Court.

[2] As has been the practice throughout this litigation, the victims are referred to by their initials to protect their privacy.

procedure." *Id.* ¶ 54. Defendants deny these allegations, or deny knowledge or information sufficient to form a belief as to the allegations. ECF No. 111 at 1; ECF No. 112 at 5; ECF No. 128 at 1; ECF No. 129 at 3.

### B. Identification Procedures

Plaintiff alleges that "[i]n addition to the suggestion inherent in any one-person show up," Defendants purportedly "represent[ed] to W.J. that the circumstances under which [Plaintiff] was stopped and his possession of a gun demonstrated that he was the assailant." SAC ¶ 58. According to the Second Amended Complaint, when W.J. did not initially identify Plaintiff as her attacker, W.J. was then taken to view Plaintiff a second time, and allegedly was shown certain distinctive items. *Id.* ¶¶ 60, 61. Detective Gerrard Holley allegedly later reported that W.J. had positively identified Plaintiff during a fairly conducted roadside identification; Plaintiff contends that this representation was false. *Id.* ¶ 62. Plaintiff further alleges that throughout the evening following his arrest, "the police conducted a series of highly suggestive identification procedures with S.F. and W.J. designed to induce them to identify [him] as their attacker." *Id.* ¶ 63; *see id.* ¶¶ 64-72. Again, Defendants deny these allegations, or deny knowledge or information sufficient to form a belief as to the allegations. ECF No. 111 at 1; ECF No. 112 at 5-6; ECF No. 128 at 1; ECF No. 129 at 3-4.

### C. The State Court Criminal Proceedings

On May 27, 1975, both victims testified at a felony hearing in the Town of Greenburgh Justice Court, and both victims identified Plaintiff during the proceeding. ECF No. 142-1 ("State Court Decision") at 2. The case was presented to a Westchester County grand jury on June 12, 1975, and the grand jury returned an indictment of Plaintiff. *See id.* Prior to Plaintiff's criminal trial, on March 15, 1976, a suppression hearing was conducted regarding the victims'

identifications of Plaintiff as the alleged perpetrator. *See id.* In advance of the hearing, Plaintiff's defense counsel was provided with the grand jury testimony of the witnesses who were expected to testify at the hearing, and certain portions of the grand jury testimony were marked as exhibits at the hearing. *See id.*; Pl.'s Mem. at 7. Following a jury trial, Plaintiff was convicted on March 26, 1976 of one count of rape in the first degree and two counts of criminal possession of a weapon in the second degree. *See* State Court Decision at 3. Plaintiff has represented that portions of the grand jury minutes also were marked as exhibits at the trial itself. *See* Pl.'s Mem. at 7.

As set forth in the Second Amended Complaint, in 2023, Plaintiff was exonerated by DNA evidence, which identified the perpetrator as Robert Goods, a serial sexual assailant. SAC ¶¶ 1, 39. Further investigation by the Conviction Review Unit of the Westchester County District Attorney's Office ("WCDAO") resulted in Mr. Goods confessing to having committed the crime alone. *Id.* ¶ 40.

### D. This Action

Plaintiff initiated this action on November 25, 2024, asserting various claims for relief pursuant to 42 U.S.C. § 1983 and New York State law. ECF No. 1. In relevant part at this stage of the litigation, Plaintiff alleges, among other things, that Defendants engaged in unduly suggestive identification procedures to induce W.J. and S.F. to falsely identify him, and misled the prosecutor and the grand jury, and thereby caused the grand jury to indict him without probable cause. SAC ¶¶ 108, 117, 129, 146. As previously noted, Defendants deny these allegations, or deny knowledge or information sufficient to form a belief as to the allegations. ECF No. 111 at 1, 3; ECF No. 112 at 9-12; ECF No. 128 at 1, 3; ECF No. 129 at 5-7, 9.

**E. The State Court Motion to Unseal**

In January 2026, Plaintiff filed a motion in Westchester County Court pursuant to New York Criminal Procedure Law § 190.25(4)(a), seeking to unseal the minutes of the 1975 grand jury presentation. *See* Pl.'s Mem. The motion requested disclosure of all "grand jury minutes of witness testimony from [Plaintiff's] criminal proceedings." *Id.* at 2. On July 13, 2026, the Honorable Robert J. Prisco denied Plaintiff's motion to unseal, finding that Plaintiff "failed to set forth a compelling and particularized need necessary to overcome the presumption of confidentiality." State Court Decision at 7 (cleaned up). Judge Prisco further found the grand jury testimony to be redundant of the testimony from the felony hearing, the suppression hearing, and the trial, all of which the parties already have in their possession. *Id.* at 6.

**F. The Instant Motion**

On July 23, 2026, Plaintiff filed a letter informing this Court of Judge Prisco's ruling, and requesting that this Court unseal the grand jury minutes. *See* Pl.'s Letter Mot. at 3-4. Plaintiff's application here requests that "the Court order the grand jury minutes [be] produced"—which the Court understands to be a request for production of the minutes of the testimony of all witnesses who appeared before the grand jury. *Id.* at 4. Defendants filed a joint memorandum of law joining Plaintiff's application and articulating their own reasons for disclosure; in an apparent attempt to narrow the scope of their request, Defendants explain that they seek "the grand jury minutes relating to the witnesses' testimony, and any exhibits introduced with the same, as opposed to the entirety of all grand jury materials." *See* Defs.' Reply at 7. On August 28, 2026, the WCDAO filed its opposition to the parties' request, *see* Opp'n Mem., and, at the direction of the Court, provided the grand jury minutes to the Court for *in camera* review, *see* ECF No. 154.

## DISCUSSION

The Court acknowledges the sensitive nature of this request. Any application for disclosure of secret proceedings before a grand jury requires particular care and attention, *see Fox v. Cnty. of Yates*, 657 F. App'x 60, 63 (2d Cir. 2016) (summary order) ("The discretion of a trial court in deciding whether to make public the ordinarily secret proceedings of a grand jury investigation is one of the broadest and most sensitive exercises of careful judgment that a trial judge can make."), and that sensitivity is heightened in a case like this, which involves victims of sexual assault who were teenagers at the time of the events in question.

Nevertheless, the Court finds, given the particular facts and circumstances presented, that disclosure of certain portions of the 1975 grand jury minutes is warranted.

### I. Legal Standard

In general, "requests for disclosure of grand jury materials should be first directed to the court that supervised the grand jury's activities." *Anilao v. Spota*, 918 F. Supp. 2d 157, 170 (E.D.N.Y. 2013). Here, appropriately, Plaintiff applied first to the Westchester County Court, where the grand jury had been empaneled in 1975, to request unsealing of the minutes. But if a state court denies an application to unseal state grand jury materials, a party may seek disclosure in the federal court where a civil action is pending, and the federal court is "not bound by state law protecting the secrecy of state grand jury proceedings." *Frederick v. New York City*, No. 11-cv-469 (JPO), 2012 WL 4947806, at *11 (S.D.N.Y. Oct. 11, 2012) (cleaned up). In such a circumstance, the federal court "has independent authority to unseal the minutes as a matter of federal law." *Vazquez v. City of New York*, No. 10-cv-6277 (JMF), 2013 WL 2449181, at *1 (S.D.N.Y. June 6, 2013).

While "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to

federal substantive and procedural policy, the requirement that plaintiffs first seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in a federal civil rights case." *Palmer v. Estate of Stuart*, No. 02-cv-4076 (LTS) (GWG), 2004 WL 2429806, at *2 (S.D.N.Y. Nov 1, 2004) (cleaned up). Under federal law, a party seeking disclosure of grand jury material must demonstrate a particularized need that outweighs the need for secrecy. *See Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 222-23 (1979). "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id.* at 223. Still, "proof of mere relevance, economy, and efficiency will not suffice." *Pizzuti v. United States*, 809 F. Supp. 2d 164, 194 (S.D.N.Y. 2011) (quoting *United States v. Charmer Indus.,* 711 F.2d 1164, 1174 (2d Cir.1983)). To show the requisite particularized need, parties "must show [1] that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed." *Douglas Oil Co.*, 441 U.S. at 222. "The same test has been applied with respect to state grand jury minutes." *Palmer*, 2004 WL 2429806, at *3 (citing cases).

## II. Whether Release of the Grand Jury Materials is Necessary to Avoid an Injustice

Plaintiff's claims against the remaining Defendants focus on what he alleges to have been unduly suggestive identification procedures to induce W.J. and S.F. to falsely identify him. These were steps in a sequence of events that eventually led to evidence being presented to prosecutors, and then to the grand jury, all of which led to Plaintiff being indicted (and later convicted) for a crime that he did not commit. *See* SAC ¶¶ 75, 108, 117, 129, 146. Some of the proceedings before the grand jury—specifically, the testimony of the victims, W.J. and S.F., and

testimony of the law enforcement witnesses, Fleming and Holley—are an integral part of that story. Meanwhile, Defendants deny that they committed any wrongdoing, and for them, the grand jury testimony of these witnesses is equally important in developing a complete picture for the presentation of their defenses.

The parties cannot obtain comparable evidence elsewhere.[3] Even if there are similarities between the victims' testimony before the grand jury and their testimony at other points in the underlying criminal proceeding, the grand jury stage is of critical importance for the federal civil rights claims in this action, and understanding the precise nature of what was and was not presented to the grand jury is vital for all parties. Accessing the grand jury testimony of Fleming and Holley is particularly important, given that both Fleming and Holley are deceased.[4] And while W.J. and S.F. are still living and are scheduled to be deposed next week, there is obviously no question that the grand jury testimony of the two victims was considerably closer in time to the critical events in dispute than the testimony they will provide in 2026. *See Anilao*, 918 F. Supp. 2d at 178 ("[D]ue to the significant passage of time between the Grand Jury proceedings and when depositions in this litigation would take place, there is a significant risk that witnesses will not recall all the details of the relevant events or their Grand Jury testimony."); *Palmer*, 2004 WL 2429806, at *3 ("It is highly unlikely that the surviving officers in 2004 could recall precisely what they said before the grand jury in 1999, at the time the matter was freshest in their

---

[3] The Court acknowledges that the testimony that occurred *closest* in time to the underlying crime was the victims' testimony at the felony hearing on May 27, 1975. But the grand jury testimony, which took place just over two weeks later, is from a contemporaneous period, and the fact that the witnesses testified multiple times shortly after the crime does not categorically preclude disclosure of the grand jury minutes.

[4] In fact, two of the three remaining individual defendants are deceased and the third, former Lieutenant John Schachinger, suffers from cognitive health issues, and was unable to testify during his deposition. *See* ECF No. 139 at 2; ECF No. 142 at 1 n.2.

minds."). Having the grand jury testimony available for the depositions of W.J. and S.F. in this litigation will enable counsel to refresh the witnesses' recollections about their prior testimony or to impeach them if necessary, and should allow the depositions to proceed more efficiently; the Court hopes and expects that this will at least help to minimize the burden on these non-parties. *See Rhooms v. City of New York*, No. 11-cv-5910 (PKC) (RER), 2014 WL 4385856, at *1 (E.D.N.Y. Sept. 4, 2014) (finding particularized need for disclosure in part based on the potential need to impeach the credibility and refresh the recollections of grand jury witnesses).

For all of these reasons, both Plaintiff and Defendants have demonstrated a particularized need for the minutes of the grand jury testimony of W.J., S.F., Fleming, and Holley, and have shown that the release of the materials is necessary to avoid a potential injustice in this federal civil rights action. Accordingly, application of this factor weighs in favor of disclosure.

**III. Whether the Need for Disclosure Outweighs the Need for Continued Secrecy**

More than 50 years has elapsed since the grand jury proceedings at issue here and the criminal trial that followed relatively shortly thereafter. The identities of the victims, and the fact that they testified before the grand jury, have been a matter of public record for that entire expanse of time, and the fact that Fleming and Holley were involved in the investigation is also a matter of public record, including because of the filing of this lawsuit. And while this case does involve an individual who was accused and later exonerated, that injustice cannot be prevented by continued sealing of the grand jury minutes. Put simply, even a modest showing of particularized need is sufficient to outweigh the continued need for secrecy of certain of the grand jury minutes at issue here, because the considerations favoring secrecy are virtually non-existent. *See Douglas Oil Co.*, 441 U.S. at 223 ("[A]s the considerations justifying secrecy

become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification.").

The Supreme Court has summarized the reasons for safeguarding the confidentiality of grand jury proceedings:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil Co.*, 441 U.S. at 219 n.10 (cleaned up) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958)); *see also id.* at 218-19. Nearly all of these considerations are moot given the significant passage of time since the completion of the grand jury proceedings and the public events that have occurred subsequent to the grand jury testimony. There is plainly no issue of potential escape, no issue regarding ongoing grand jury deliberations, no issue with witness tampering in connection with the grand jury proceeding or related criminal trial, and no issue regarding an innocent accused who was exonerated in connection with the grand jury investigation.

The only pertinent policy consideration here is the generalized principle that allowing disclosure of grand jury minutes could have a chilling effect on the participation of future witnesses in grand jury proceedings, because "[f]ear of future retribution or social stigma may act as powerful deterrents to those would come forward and aid the grand jury in the performance of its duties." *Douglas Oil Co.*, 441 U.S. at 222. While this consideration is of course significant, the facts and circumstances of this case make it far less compelling with respect to the testimony of the two victims, W.J. and S.F., and the two law enforcement

witnesses, Fleming and Holley. The victims' identities are already known—they testified publicly in open court at the felony hearing, suppression hearing, and at trial—and the fact that Fleming and Holley were involved in the underlying investigation is also well known. Specific concerns about retribution and social stigma are therefore nonexistent here, as the disclosure of the testimony of these witnesses would not reveal any participants in the grand jury process who are not already publicly associated with the case. The generalized concern about deterring future grand jury witnesses is also less pronounced for these categories of witnesses: (1) law enforcement officers who often are required to testify in various proceedings as part of their duties and responsibilities, *see Rhooms*, 2014 WL 4385856, at *1 ("It cannot seriously be argued that law enforcement officers would shy away from giving truthful testimony to a grand jury just because their prior grand jury testimony had been disclosed in a civil rights case."); and (2) victims of crimes who actively participate in all phases of a criminal prosecution, including trial testimony, thereby at least suggesting a decision to prioritize that participation over personal anonymity. Thus, "[o]nly in the most abstract and minimal sense might a prospective grand juror who learns of a decision to unseal [these] grand jury minutes be moved to hide or shade testimony in a future criminal case." *See Frederick*, 2012 WL 4947806, at *13.

* * * * * * * * * *

Separately, the WCDAO argues in passing that under New York State law, the identities of the victims of a sex crime are statutorily protected from disclosure even after the action has concluded. *See* Opp'n Mem. at 16 (citing N.Y. Civ. Rights Law § 50-b). New York Civil Rights Law § 50-b prohibits disclosure of certain records that identify the victims of sex offenses. The statute provides, in relevant part:

> The identity of any victim of a sex offense . . . shall be confidential. No report, paper, picture, photograph, court file or other documents, in the custody or possession of any

> public officer or employee, which identifies such a victim shall be made available for public inspection. No such public officer or employee shall disclose any portion of any police report, court file, or other document, which tends to identify such a victim except as provided in subdivision two of this section.

N.Y. Civ. Rights Law § 50-b.

The Court is not persuaded that § 50-b mandates nondisclosure of the grand jury minutes here. Tellingly, the WCDAO does not cite a case showing that § 50-b precludes disclosure this context. And in any event, "New York state law does not govern discoverability and confidentiality in federal civil rights actions." *MacNamara v. City of New York*, No. 04-cv-9612 (KMK) (JCF), 2006 WL 3298911, at *2 (S.D.N.Y. Nov. 13, 2006); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("Simple direct application of [New York privacy statutes] would be undesirable and improper" and would "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983."). Accordingly, § 50-b does not mandate nondisclosure of the grand jury testimony. In addition, in this instance, the identities of the victims, W.J. and S.F., are already known, as illustrated by the fact that they are scheduled to be deposed in this litigation next week. That said, it is appropriate to take precautions to minimize further public references to the names of the victims. There are numerous examples of courts in this district requiring victims whose identities are protected under New York law by § 50-b to be identified only by their initials in publicly available court filings. *See, e.g.*, *Lema-Yaucan v. Melecio*, No. 23-cv-3860 (NSR) (AEK), 2026 WL 2030228, at *2 (S.D.N.Y. July 14, 2026). Further, the parties have consistently referred to the victims by their initials throughout this proceeding, and should continue to do so. Finally, disclosure of portions of the grand jury minutes here does not mean that the minutes will be filed on the public docket. The victims' identities can be further protected by requiring that the minutes be treated as "Confidential Information" in accordance

with the Confidentiality Stipulation and Protective Order in place in this matter. *See* ECF No. 84.

* * * * * * * * * *

For all of these reasons, the fact that there are only limited arguments in favor of continued secrecy weighs heavily in favor of disclosure of certain portions of the grand jury testimony.

**IV. Whether the Request Was Structured to Cover Only Material Needed**

"The substantial discretion afforded to district courts in deciding motions to unseal grand jury minutes extends to control over the extent of any disclosure ultimately authorized." *Frederick*, 2012 WL 4947806, at *14. "[I]f a court determines that grand jury materials should be disclosed, its 'disclosure order must be structured to cover only the material required in the interests of justice.'" *Anilao*, 918 F. Supp. 2d at 181 (quoting *United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980)).

The WCDAO contends that the parties have made no effort to tailor their request for disclosure to particular witnesses, and instead seek the entirety of the grand jury testimony. *See* Opp'n Mem. at 17. The Court agrees that the parties' requests are not as tailored as they could have been.

While the Court has found there to be a particularized need for the disclosure of the grand jury testimony of W.J. and S.F. and the two law enforcement witnesses, Fleming and Holley, the findings that support the disclosure of that testimony (and any exhibits used as part of that testimony) do not apply to the other witnesses who testified in the grand jury. Neither Plaintiff nor Defendants offer any arguments for why the grand jury testimony of these civilian witnesses would even be relevant to this litigation. And the one valid policy consideration regarding

continued secrecy—that the disclosure of grand jury testimony could potentially make it more difficult as a general matter to secure the cooperation of witnesses for grand jury testimony in future investigations—is most salient when it comes to witnesses like these individuals, who were contacted as part of a police investigation, but who had no professional role in the investigation and no connection to the crime under investigation. In addition, the Court has reviewed the testimony of these additional witnesses, and it is clear that none of that testimony has any bearing on any of Plaintiff's claims or Defendants' defenses.

Accordingly, application of this factor counsels against granting the parties' overbroad application in full.

* * * * * * * * * *

In sum, the Court, having considered all three *Douglas Oil* factors in the context of the particular facts and circumstances of this case, concludes that the grand jury minutes for the testimony of W.J., S.F., Fleming, and Holley (and any exhibits used as part of that testimony) should be released to the parties, but that the testimony of all other grand jury witnesses should remain sealed.

**CONCLUSION**

For the foregoing reasons, the parties' joint motion to unseal the minutes from the 1975 grand jury proceedings in the New York State criminal prosecution captioned *The People of the State of New York v. Leonard Mack*, Indictment No. 70002-75, is GRANTED IN PART AND DENIED IN PART.

As promptly as possible, and in any event by no later than Monday, October 12, 2026 at 12:00 p.m., the WCDAO must provide copies of the grand jury minutes for the testimony of W.J., S.F., Fleming, and Holley (and any exhibits used as part of that testimony) to counsel of record for the parties in this action. The grand jury minutes must be treated as "Confidential Information" in accordance with the Confidentiality Stipulation and Protective Order in place in this matter. *See* ECF No. 84.

Dated: October 9, 2026
White Plains, New York

**SO ORDERED.**

Andrew Krause

ANDREW E. KRAUSE
United States Magistrate Judge